**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **WILLIAM A. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 18-CV-841-RJD** |
| | ) | |
| **EXECUTIVE OFFICE OF US** | ) | |
| **ATTORNEYS, FEDERAL BUREAU OF** | ) | |
| **INVESTIGATION, and DEPARTMENT** | ) | |
| **OF JUSTICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

This matter is before the Court on the Motion for Partial Summary Judgment Against the FBI for Counts 4-14, 16-27, 29-30, and 32-34 (Doc. 37) filed by Plaintiff, and the Motion for Partial Summary Judgment as to FOIA Requests filed by Defendants (Doc. 51). The parties have responded to each other's motions (Docs. 38, 39, 56).

### Background

Plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. He alleges that the Executive Office of US Attorneys ("EOUSA") and Federal Bureau of Investigations ("FBI") did not respond properly to his requests for information under the FOIA. The Court granted partial summary judgment for the DOJ on Plaintiff's claims involving the EOUSA requests. Plaintiff's claims against the FBI all remain pending and are the subject of the cross motions for summary judgment.

### Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

### Freedom of Information Act ("FOIA")

The Seventh Circuit Court of Appeals has described the FOIA generally:

> "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L.Ed.2d 159 (1978). Toward that end, FOIA provides that agencies "shall make ... records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules." 5 U.S.C. § 552(a)(3)(A). The Act is "broadly conceived," and its "basic policy" is in favor of disclosure. *Robbins Tire,* 437 U.S. at 220, 98 S. Ct. 2311. Agencies are, however, permitted to withhold records under nine statutory exemptions and three special exclusions for law-enforcement records. *See* 5 U.S.C. § 552(b)-(c).

*Rubman v. United States Citizenship & Immigration Servs.*, 800 F.3d 381, 386 (7th Cir. 2015).

In creating the exemptions to FOIA disclosure, "Congress sought 'to reach a workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess., 6 (1966), U.S. Code Cong. & Admin. News 1966, pp. 2418, 2423). "But these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Department of the Air Force v. Rose,* 425 U.S. 352, 361 (1976). Therefore, the Court must narrowly construe the exemptions, *id.*, and the agency bears the burden of showing they apply, 5 U.S.C. § 552(a)(4)(B). *John Doe Agency*, 493 U.S. at 152. In reaching its decision, the Court should take a practical approach to achieve the balance sought by Congress. *John Doe Agency*, 493 U.S. at 158.

<u>FOIA Request</u>

To establish a cause of action under the FOIA, a plaintiff must show that, in response to a valid FOIA request, "an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). A valid FOIA request reasonably describes the records if the agency can determine exactly what records are being requested. 5 U.S.C. § 552(a)(3)(A); *Kowalczyk v. Department of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996). "A reasonable description of records is one that would allow an agency employee to locate the records 'with a reasonable amount of effort.'" *Moore v. F.B.I.*, 283 F. App'x 397, 398 (7th Cir. 2008) (quoting *Marks v. United States DOJ,* 578 F.2d 261, 263 (9th Cir. 1978)). A request seeking all records relating to a subject may not satisfy this standard and therefore may not trigger the agency's obligation to search for records. *See Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 61-62 (D.D.C. 2013). The request must also be made in compliance with the agency's rules on the time, place, fees and procedures for making such a request. 5 U.S.C. § 552(a)(3)(A).

<u>Search for Records</u>

Agency records may be found to be improperly withheld if the agency failed to make "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Rubman v. United States Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015) (internal quotations omitted); *accord Stimac v. United States Dep't of Justice*, 991 F.2d 800, 1993 WL 127980, at *1 (7th Cir. 1993) (Table) (search must be "reasonably calculated to uncover all relevant documents"); *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir. 1992) (question is whether search was "reasonably calculated to uncover all relevant documents"). The agency need not search all of its record systems, but only

systems where responsive information is likely to be found, although it should explain why it believes such limits are reasonable. *Oglesby v. United States Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). "Good faith is presumed . . ., and it can be bolstered by evidence of the agency's efforts to satisfy the request." *Rubman*, 800 F.3d at 387 (internal citation omitted).

At the summary judgment stage, such information normally comes in the form of "reasonably detailed nonconclusory affidavits submitted in good faith." *In re Wade*, 969 F.2d at 249 n. 11. The plaintiff may overcome the presumption of good faith by presenting "countervailing evidence as to the adequacy of the agency's search." *Rubman*, 800 F.3d at 387; *see Carney v. United States Dep't of Justice*, 19 F.3d 807, 813 (2d Cir. 1994) (bare allegations and speculation insufficient to overcome presumption). Importantly, "[t]he issue is *not* whether other documents may exist, but rather whether the search for undisclosed documents was adequate." *In re Wade*, 969 F.2d at 249 n. 11 (emphasis in original); *accord Rubman*, 800 F.3d at 387.

Exemptions

Records may also be found to be improperly withheld if the agency misapplies a statutory exemption. *See, generally, Solar Sources, Inc. v. United States*, 142 F.3d 1033 (7th Cir. 1998) (reviewing the application of certain exemptions). As with the question of the adequacy of a search, to satisfy its burden of showing an exemption applies, the agency must "provide detailed justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing." *Antonelli v. D.E.A.*, 739 F.2d 302, 303 (7th Cir. 1984). "[T]he agency has the initial burden of demonstrating why it should not disclose the information." *Antonelli v. F.B.I.*, 721 F.2d 615, 617 (7th Cir. 1983) (citing *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)). If the agency meets its burden and there is a public interest in disclosure, the Court will balance the agency's reasons for withholding

documents against that public interest.   *Antonelli v. F.B.I.*, 721 F.2d at 617.

The statutory exemptions relevant to this case are commonly known as Exemptions 6, 7(A), 7(C), 7(D), 7(E).   Those provisions exempt the following from disclosure:

> (6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;
>
> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceeding… (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. . . .

5 U.S.C. § 552(b)(6)-(7).

*Glomar* Response

In the event even acknowledging whether responsive records exist would jeopardize the interests sought to be protected by FOIA exemptions, the agency may respond with a "Glomar response."[1]   *See Bassiouni v. C.I.A.*, 392 F.3d 244, 246-47 (7th Cir. 2004); *Antonelli v. F.B.I.*, 721 F.2d at 617.   For example, where a requestor asks for documents concerning a law enforcement confidential source, an agency's confirming that a file on the individual exists and that it is exempt under the exemption for information that could expose the identity of a confidential source, 5

---

[1] So named after "the *Hughes Glomar Explorer,* a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor.   See *Phillippi v. CIA,* 546 F.2d 1009 (D.C. Cir. 1976)."   *Bassiouni v. C.I.A.*, 392 F.3d 244, 246 (7th Cir. 2004).

U.S.C. § 552(b)(7)(D), the denial could lead the requester to deduce that the individual is a confidential source. *Antonelli v. F.B.I.*, 721 F.2d at 618. Similarly, "revealing that a third party has been the subject of FBI investigations is likely to constitute an invasion of that person's privacy that implicates the protections of Exemptions 6 and 7," and it could jeopardize valuable FBI investigations by identifying FBI informants and ongoing investigations. *Id.* Indeed, the Supreme Court has held "as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *USDOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 780 (1980).

A *Glomar* response neither confirms nor denies that responsive records exist. *Bassouni*, 392 F.3d at 246-47; *Antonelli v. F.B.I.*, 721 F.2d at 617-18. However, when the interest to be protected is an individual's privacy interest, the agency may not use a *Glomar* response if the requestor provides a waiver from the individual, proof that the individual is dead, or a showing that the public interest outweighs the individual's privacy interest. *See, e.g., Donato v. Executive Office for U.S. Attorneys*, 308 F. Supp. 3d 294, 306 (D.D.C. 2018) (acknowledging FBI policy not to issue *Glomar* response to FOIA request seeking third party information where "the requester submits a privacy waiver or proof of death, or demonstrates an overriding public interest in disclosure.").

"[T]he plaintiff can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *ACLU*, 710 F.3d at 427; *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007). This rule applies where the FBI has officially acknowledged a connection between the individual and the FBI such as, for example, when the individual was called as a government witness at trial and identified as an FBI informant.

5 U.S.C. § 552(c)(2) (criminal informant records not subject to FOIA unless informant has been "officially recognized"); *see Pickard v. DOJ*, 653 F.3d 782, 786 (9th Cir. 2011); *Boyd v. Criminal Div. of USDOJ*, 475 F.3d 381, 388 (D.C. Cir. 2007). Where the existence of a relationship between the FBI and the individual—and logically the existence of records regarding the individual—has been officially recognized—the FBI can no longer rely on a *Glomar* response. *Pickarc*, 653 F.3d at 786.

Three things are required to establish official acknowledgement by an agency: "First, the information requested must be as specific as the information previously released. Second, the information requested must match the information previously disclosed. . . . Third, . . . the information requested must already have been made public through an official and documented disclosure." *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 765 (D.C. Cir. 1990); *accord Wolf*, 473 F.3d at 378. Further, a prior disclosure by a *different* agency does not waive the right of a responding agency to make *Glomar* response, although it may bear on the merits of asserting such a response. *Florez v. C.I.A.*, 829 F.3d 178, 186 (2d Cir. 2016).

Summary Judgment

An agency can carry its burden on summary judgment by submitting affidavits that "(1) describe the withheld documents and the justifications for non-disclosure with reasonably specific detail, (2) demonstrate that the information withheld falls logically within the claimed exemption, and (3) are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Kimberlin v. Department of Treasury*, 774 F.2d 204, 210 (7th Cir. 1985) (internal quotations omitted); *accord ACLU v. United States Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011). The agency is entitled to a presumption of good faith which cannot be rebutted by mere speculation. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see In re Wade*,

969 F.2d at 246. Courts must give substantial weight to an agency's affidavit. *American Civil Liberties Union v. C.I.A.*, 710 F.3d 422, 427 (D.C. Cir. 2013) ("*ACLU*"). The Court has discretion to review documents or an index of withheld documents (a "*Vaughn* index") *in camera* but is not required to do so where the agency has submitted a sufficient affidavit. *Kimberlin*, 774 F.2d at 210; *Antonelli v. D.E.A.*, 739 F.2d at 303-04. "Ultimately, an agency's justification for invoking a FOIA exemption, whether directly or in the form of a *Glomar* response, is sufficient if it appears 'logical' or 'plausible.'" *ACLU*, 710 F.3d at 427 (internal quotations omitted).

Judicial Relief

If an agency has improperly withheld agency records, the Court has the power "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The Court is not inclined, however, to order wholesale production of all documents requested without regard to exemption eligibility. Such an approach, which appears to be what Plaintiff seeks, "would eviscerate the many and genuine concerns underlying the FOIA exemptions," *Caifano v. Wampler*, 588 F. Supp. 1392, 1394 (N.D. Ill. 1984), and would utterly fail to achieve the balance between disclosure and privacy Congress intended to achieve through the FOIA.

**Analysis**

Plaintiff has submitted numerous FOIA requests to the FBI. In the instant matter, Plaintiff's requests regarding 57 subjects were set forth in six letters. The Court starts with Defendants' arguments because they carry the initial burden of showing the searches were reasonable and the claims of exclusions justified. The Court will simultaneously review Plaintiff's arguments set forth in both his motion for summary judgment and in his response to Defendants' motion.

As an initial matter, Defendants ask the Court to disregard White's "Sworn Declaration" (Doc. 37-1) attached to his Motion because it was not properly executed, portions are not based on personal knowledge, it contains inadmissible hearsay, and it includes a multitude of issues irrelevant to the case. To the extent the Declaration contains hearsay and inadmissible evidence, the Court will not consider such portions. Additionally, Plaintiff complains Defendants have incorporated their summary judgment response by reference into their summary judgment motion. Plaintiff objects to Defendants being allowed to make two responses to his summary judgment motion. In order to minimize the already voluminous briefing and avoid repetitive arguments, the Court exercises its discretion to allow both parties to incorporate freely all of their briefs, either in support or in opposition to summary judgment. The Court will consider all arguments, wherever they occur, and the evidence cited with particularity in support of those arguments.

FBI Records Systems

A brief overview of the FBI's records system is a necessary first step in analyzing its response to Plaintiff's FOIA requests. The DOJ has submitted the affidavit of David M. Hardy, the section chief of the FBI's Records/Information Dissemination System of the Records Management Division to describe the FBI's record-keeping systems ("Hardy Decl.") (Doc. 51-1). Plaintiff has produced no evidence to contradict Hardy's declaration, so the Court accepts it as true for summary judgment purposes.

The FBI maintains the Central Records System ("CRS") for the entire FBI, including its headquarters, field offices and legal attaché offices worldwide. The CRS consists of "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency to include performance of administrative and personnel

functions." Hardy Decl. ¶ 47. The files in the CRS are organized by subject categories, referred to as "classifications," that include "types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." *Id.* at ¶ 48.[2]

Files in the CRS are indexed by subject matter, including "by individual (persons), by organization (organizational entities, places, and things), and by event (*e.g.,* a terrorist attack or bank robbery)." *Id.* at ¶ 50. This general index includes "main entries," that is, the main subject of a file such as an individual, organization or other subject matter. *Id.* at ¶ 49. The index also includes "reference entries" or "cross-references," indicating that an individual, organization or subject matter is mentioned or referenced in a "main file" about another subject matter. *Id.* Because the FBI indexes only information it considers relevant and necessary for its future retrieval, not all names or subject matters in a file are recorded in the index. *Id.* at ¶ 50.

In 1995, the FBI began using Automated Case Support ("ACS"), an electronic case management system. *Id.* at ¶ 51. More than 105 million CRS records were converted and incorporated into ACS when it was first activated. *Id.* An ACS feature called the Universal Index ("UNI") allows searching of the CRS index in ACS. *Id.* at ¶ 52. Because the ACS includes indices that predate its activation in 1995, a UNI search in ACS can locate FBI records that were indexed even before 1995, as well as entries that have been added since ACS began, although some old records are not indexed and must be manually searched in a card index. *Id.* UNI currently can search approximately 119.7 million records. *Id.*

---

[2] Each classification corresponds to a numerical code. When a particular case file is opened, it is assigned a three-component code, the first indicating the classification number, the second indicating which FBI office initiated the file, and the third indicating the unique case file number within the subject matter. *Id.* Within each case file, each document is numbered. *Id.*

In 2012, the FBI began using Sentinel, a newer, web-based case management system which is also indexed to facilitate document retrieval. *Id.* at ¶ 53. When a record is created in Sentinel, its information is also placed into ACS. *Id.*

When the FBI needs to locate records in CRS in response to a FOIA request, it searches the ACS index using UNI and, if a record was possibly prepared after Sentinel was activated in 2012, it also searches the Sentinel index. The FBI believes that these index searches "are reasonably expected to locate responsive material within the vast CRS" because all information the agency believed was pertinent and necessary to be retrievable for its own agency functions was indexed in a way that it could retrieve. *Id.* at ¶ 54.

When the FBI gets a FOIA request, it conducts a search in ACS, and possibly Sentinel, using the exact subject used by the requestor and similar permutations of the subject. *See id.* at ¶ 56 *et seq.* If it locates a main file record, that is, a file where the requested subject is indexed as the main subject of the file, it reviews the records in the file for responsiveness and for FOIA disclosure exemptions. *See, e.g., id.* at ¶65. If it is unable to locate a main file record where the requested subject is the main subject of the file but was able to locate potential cross-reference entries, it does not review the cross-reference files unless the requestor specifically asks for cross-references because such review is unlikely to produce enlightening information about the subject of the request and would likely increase the requestor's duplication fees, the agency's response time, and the administrative burden on the FBI. *See id.* at ¶¶ 56. It informs the requestor of the potential increase in page count, charges and response time, in the event the requestor asks for review of the files in which the cross-references appear. *See id.* at ¶ 60. It does not interpret a request for "all records" as including records in cross-reference files.

Plaintiff's FOIA Requests:

Defendants assert Plaintiff's requests and the FBI's actions taken in response thereto can be grouped into one of the following five categories:

1) Plaintiff failed to exhaust administrative remedies or otherwise perfect his request before filing his Complaint;

2) *Glomar* response, in that confirming or denying the existence of records would cause a harm protected by a FOIA exemption;

3) Search was conducted, potentially responsive records were located, and either are being processed or awaiting processing;

4) Search was conducted and no records were located in the search; and

5) Search was conducted and potentially responsive records are categorically exempt pursuant to FOIA Exemption 7(A) because release of the information would cause harm to a pending law enforcement investigation or prosecution.

Defendants seek summary judgment as to all FOIA requests in Categories 1, 2, and 4. As to the requests still in processing classified within Category 3, the FBI asks the Court to consider their memorandum a status report to the Court demonstrating they are acting in good faith in searching for and responding to Plaintiff's requests for voluminous records on a reasonable schedule. As to the request in Category 5, the FBI proposes to recheck the status of the investigation at a later time, to reevaluate whether records should be produced.

The Court reviews each count as follows[3]:

**Count 3: FOIA # 1369569 (Michael Lefkow, deceased)**

Summary of FBI Actions:[4] Plaintiff's request for subject was included in his multi-subject letter dated February 19, 2017. FBI acknowledged receipt on 3/22/17. FBI sent a cost/negotiation letter on 3/23/17 and Plaintiff responded to cost letter on 4/4/17 (no reduction in scope, alternative address provided). FBI sent request for upfront payment of 50% of estimated costs on 10/4/17 and after no response was received in 30 days, FBI

---

[3] Counts 1 and 2 were directed to Defendant EOUSA and are not subject to the current cross-motions for summary judgment before the Court.

[4] The Summary of FBI Actions and Search Description for each Count is taken verbatim from Exhibit B to the Declaration of David Hardy (Doc. 51-3).

closed the request 11/6/17. No administrative appeal was filed. Plaintiff filed Complaint on April 9, 2018. On 8/13/19, Plaintiff submitted the requested advance payment of $297.50 and the request was then reopened for processing on 8/13/19. Currently, the FBI is processing records at a rate of 500 pages reviewed per month and making monthly releases of non-exempt information until complete. Thus far, the FBI has made monthly interim releases on November 8, 2019, December 6th, 2019. The FBI will continue to make monthly releases until processing is completed.

Search Description: The FBI utilized a search cut-off date[5] of 3/22/2017. The FBI conducted a TP search of the Central Records System (CRS) via the Automated Case System (ACS) and an OTN search of the Manual Indices using the following terms: Michael Lefkow, Michael F. Lefkow, Michael Francis Lefkow. Plaintiff's request did not seek cross-references, therefore the search conducted was for main files only. Approximately 20,000 pages of main file records plus a large amount of media was located. The FBI verified the accuracy of the search at the litigation stage.

Defendants contend this count falls into Category 3 because responsive records are still being processed. The FBI has located approximately 20,000 pages of potentially responsive records and are currently processing records at the rate of 500 pages per month. Plaintiff omits Count 3 in his motion seeking summary judgment. Defendants do not seek summary judgment since the records are still being processed, however, the Court will review the reasonableness of the current processing rate. The FBI has indicated it has located in total approximately 55,500 pages of potentially responsive records as a result of its searches in this case. At the current processing rate of 500 pages per month, it will take approximately nine years for the FBI to process and produce the records.

It is true that FOIA requires a federal agency to make records "promptly available" once a proper request is received in the proper manner. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). The Court of Appeals for the District of Columbia Circuit has observed that "depending on the circumstances typically would mean within days or a few weeks of a 'determination,' [to comply

---

[5] Search cut-off dates are the date the FBI conducts its first search in response to the request.

with a records request,] not months or years." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) ("*CREW*").

However, it is also true that federal agencies are not private investigation agencies or copying factories for individuals seeking mountains of government documents for no articulable public purpose. It is true that it is improper to inquire into the requester's public interest motive for his request when determining whether the agency must respond, but this Court believes it is entirely appropriate to consider it when determining *how* and *when* the agency must respond. This and other factors should be weighed: the existence of an articulable public interest in the records, the number of responsive records expected, the diligence of the agency in attempting to respond to the request, and potential disruption to the agency and delays to other FOIA requesters from a tighter production schedule. *See, e.g., Middle E. Forum v. DHS*, 297 F. Supp. 3d 183, 186 (D.D.C. 2018); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014); *Elec. Privacy Info. Ctr. v. F.B.I.*, 933 F. Supp. 2d 42, 46 (D.D.C. 2013). By enacting FOIA, Congress could not have intended to allow a single requester to paralyze a federal agency by submitting thousands of FOIA requests for which there could be hundreds of thousands—even millions—of responsive documents and then demanding the entire disclosure be made within a matter of weeks, or even a few years.

In this case, Plaintiff seeks records from the FBI on no less than 57 subjects. He has refused to narrow his requests to make them more manageable or more likely to produce documents that actually shed light on the functioning of government. He has also failed to articulate any real public interest in the records he seeks. Instead, his requests amount to a fishing expedition designed to uncover information about those whom he believes have wronged him and his white supremacist affinity groups. While he may be entitled to all of the non-excluded or non-exempt records he seeks, he is not entitled to them next week, or even next year.

At issue is whether the FBI's current policy of processing records at a rate of 500 pages per month complies with FOIA. When determining the rate at which a federal agency must respond to FOIA requests, courts often give deference to the agency's release policies. *See Negley v. DOJ*, No. 15-cv-1004, 2018 WL 1610950, at *7 (D.D.C. Apr. 3, 2018), *appeal filed*, No. 18-5133 (D.C. Cir. May 2, 2018) (applying DOJ's 500-page interim release policy because the policy would "promote efficient responses to a larger number of requesters" and "the Court sees no basis to expedite release"). As set forth in the Hardy Declaration, the FBI adheres to the 500-page-per-month policy because it promotes efficiency and allows the FBI to maintain proper information security while also processing multiple complex requests simultaneously and meeting litigation demands. A number of Courts have found a production rate of 500 pages per month reasonable under specific circumstances. See *Nat'l Sec. Counselors v. United States Dep't of Justice*, 848 F.3d 467, 471–72 (D.C. Cir. 2017) (recognizing the FBI's 500-page-per-month policy "serves to promote efficient responses to a larger number of requesters"); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 142 (D.D.C. 2018) (where Plaintiff's overall multi-subject request equated to in excess of approximately 100,000 pages, the FBI's policy of releasing 500 pages per month was justified); *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183 (D.D.C. 2018) (DHS proposed rate of processing 500 pages was an appropriate rate of production); *Colbert v. Fed. Bureau of Investigation*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018) (the Court refused to order the FBI to adjust its standard processing rate of 500-pages per month); *Energy Future Coal. v. Office of Mgmt. & Budget*, 201 F. Supp. 3d 55 (D.D.C. 2016) ("OMB shall continue to review 500 documents per month with respect to Plaintiffs' request).

While the Court recognizes a more robust schedule would be appropriate under certain

circumstances, in this case, the FBI's processing rate of 500 documents per month is reasonable. Plaintiff's own FOIA requests are exemplary of the strain placed on the FBI's resources. According to the FBI's classification system for FOIA requests, Plaintiff's requests for just ten subjects in this case amount to over 55,000 pages of potentially responsive records in closed files. That number does not include the voluminous requests that are the subject of Plaintiff's other pending FOIA cases. Plaintiff has failed to show the subject of his request warrants expedited treatment. Given the large volume and complexity of responding to Plaintiff's request, releasing documents at the rate of 500 pages per month balances the need for transparency in government with the allocation of the FBI's limited resources.

**Count 4: FOIA # 1369575 (Countering Violent Extremism Operations)**

Summary of FBI Actions: Plaintiff's request for subject was included in his multi-subject letter dated February 19, 2017, and generally sought "The Countering Violent Extremism Program" (CVEO). The FBI assigned FOIA No. 1369575-000 to the request. The FBI's determination letter was sent March 22, 2017 and advised the records sought were not reasonably described. The FBI closed the request. Plaintiff provided an amended request dated March 28, 2017, narrowing the requested records to "Director-level" documentation of implementation of CVEO at FBI. The FBI re-opened the FOIA on April 24, 2017 and advised Plaintiff that unusual circumstances apply to the request. Approximately 134 pages of potentially responsive material was located and awaits processing. Plaintiff filed Complaint on April 9, 2018.

Search Description: The FBI utilized a search cut-off date of March 22, 2017 and through a retrieval search (RTS) of FDPS determined the requested subset of records were already searched for and processed as a sub-set of other current FOIA requests. The responsive records were then pulled for this request. 134 pages were located and deemed responsive to the Plaintiff's request. No administrative appeal was filed. The FBI verified the accuracy of the search at the litigation stage.

Defendants do not seek summary judgment regarding Count 4 as the release of the records responsive to the request is pending. Plaintiff, however, does seek summary judgment arguing it has been 30 months since he requested the records and the FBI has failed to promptly provide them. As set forth above, the Court finds Defendants' production of 500 pages per month is

reasonable.   Plaintiff's motion is denied.

**Count 5: FOIA # 1369846 (World Church of the Creator)**

>   Summary of FBI Actions: Plaintiff's request for subject was included in his multi-subject letter dated February 19, 2017. On April 4, 2017, the FBI provided 196 pages of records previously processed for another requester on the same subject. On April 19, 2017, Plaintiff filed an administrative appeal, challenging only the withholdings within the records provided. OIP acknowledged receipt of the appeal on June 29, 2017, assigning it tracking number DOJ-AP-2017-005032. DOJ/OIP adjudicated the appeal on August 18, 2017, affirming (on partly modified grounds) the FBI's determination, and referring the classified information to the DOJ Department Review Committee (DRC) for further review. Plaintiff filed Complaint on April 9, 2018. Upon filing of the Plaintiff's Complaint, the FBI conducted a new search, and located approximately 15,960 non-pending, potentially responsive pages.

Defendants do not seek summary judgment regarding Count 5 as approximately 15,960 additional responsive pages currently await processing.   The FBI is processing the request at 500 pages per month.   Plaintiff seeks summary judgment arguing it has been 30 months since he requested the records and the FBI has failed to promptly provide them and the current production of 500 pages per month is inadequate.   Additionally, Plaintiff objects to the FBI aggregating ten of the subjects of his requests.   The FBI determined ten of the subjects constituted a series of related requests due to the similarity in scope and content and charged aggregate duplication fees as set forth in the FOIA statute.   Plaintiff argues Defendants should not be allowed to aggregate and process his requests consecutively.

When an agency reasonably believes that a requester is attempting to divide a single request into a series of requests for the purpose of avoiding fees, the agency may aggregate those requests and charge accordingly.   *See* 28 C.F.R. § 16.10.   The FBI reasonably believed a number of Plaintiff's requests involved related matters.   The Court finds under the circumstances there is a reasonable basis for determining that aggregation is warranted.   Additionally, as set forth above, the Court finds Defendants' production of 500 pages per month is reasonable.   Plaintiff's motion

is denied.

**Count 6: FOIA # 1369559 (Clifford Herrington, Andrea Herrington, R James)**

Summary of FBI Actions: Plaintiff's request for subject was included in his multi-subject letter dated February 19, 2017. The FBI responded to the request subject by letter dated March 22, 2017, advising that the request was unperfected (no privacy waiver or proof of death provided on third party). By letter dated April 4, 2017, Plaintiff supplied additional information on the requested third parties by noting their alleged involvement with the National Socialist Movement. However, Plaintiff still failed to provide proof of death or privacy waiver and therefore this request subject remains unperfected. The FBI denied this request pursuant to Glomar based on FOIA Exemptions 6 and 7(C). Plaintiff filed his Complaint on April 9, 2018, without filing an administrative appeal first.

Defendants seek summary judgment on Count 6 arguing Plaintiff failed to exhaust his administrative remedies because he did not perfect his request by providing a privacy waiver or proof of death on the third parties.   In response, Plaintiff argues he responded to the FBI in a letter of April 4, 2017, proffering a public interest justification for the records.   Defendants acknowledge they received Plaintiff's letter of April 4, 2017, telling the FBI, "The public interest in uncovering your agency's involvement in the creation, and, operation, of Satanic pedophile cults, overrides any privacy concern.   Further, there is no privacy interest in non-personnel file records detailing work done for a public agency." (Doc. 10 at 65-66).   Plaintiff asserts he did not receive a response from the FBI notifying him of any deficiencies in his public interest argument, therefore, he constructively exhausted his request.   Defendants argue Plaintiff's assertion contained no official acknowledgement by the FBI concerning the existence of records regarding third parties, nor did it provide a privacy waiver or proof of death as requested.   Defendants seek summary judgment for failure to exhaust his administrative remedies because Plaintiff filed his complaint without filing an administrative appeal.   Additionally, Defendants contend the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties.

Plaintiff seeks summary judgment on Count 6 arguing there is a public interest in the release of the records requested. Plaintiff asserts the FBI is creating and operating "white supremacist extremist" groups and that Clifford Herrington was a leader for one such group. Plaintiff also contends "the primary function of the FBI in modern America is to foment crime through manipulation of mentally and intellectually disabled people, and, a Satanic pedophile cult seems as good of an instrument in carrying out the mission as a "Nazi" party." Plaintiff asserts the FBI operates a wide variety of political, religious, and criminal organizations including Satanic cults and pedophile clubs, and that the requested records could shed light on whether these individuals were working with the FBI in conducting such activities. Plaintiff argues the FBI may not invoke *Glomar* because it has previously disclosed during one of his trials that Clifford and Andrea Herrington were federal informants. Plaintiff also argues the disclosure of the record of the R James emails gathered by the FBI make a *Glomar* response unavailable.

"[A] plaintiff asserting a claim of prior disclosure must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C.Cir.1983). Prior disclosure of similar information does not suffice; instead, the *specific* information sought by the plaintiff must already be in the public domain by official disclosure. *Public Citizen v. Dep't of State,* 11 F.3d 198, 202 (D.C.Cir.1993). The insistence on exactitude recognizes "the Government's vital interest in information relating to national security and foreign affairs." *Id.* at 203; *see also Military Audit Project,* 656 F.2d at 752–53 (rejecting claim that public disclosure of some information overlapping with content of requested material results in waiver as to all information). *Wolf v. C.I.A.*, 473 F.3d 370, 378 (D.C. Cir. 2007).

Plaintiff failed to meet the initial burden of pointing to specific information in the public

domain that appears to duplicate that being withheld. Plaintiff alleges Clifford and Andrea Herrington have been disclosed as federal informants but does not point to any specific information that is already in the public domain. The Court finds the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties. Defendants are entitled to summary judgment on Count 6.

### Count 7: FOIA # 1377814 (FBI's Use of Informants at April 29, 2017 Pikesville, KY Rally)

Summary of FBI Actions: Plaintiff submitted his request by letter dated June 5, 2017 and the FBI acknowledged receipt of request on June 23, 2017. The FBI issued a determination by letter dated September 1, 2017 advising it could neither confirm nor deny records revealing the use of confidential informants. Plaintiff filed Complaint on April 9, 2018, without having filed an administrative appeal first.

Search Description: Due to the assertion of an Exemption 7(D) and 7(E) Glomar, no search is warranted.

Defendants seek summary judgment arguing a *Glomar* response was appropriate to a request for information revealing the use of confidential informants. Plaintiff argues he requested "all records in the FBI's possession" regarding the rally, and that the FBI improperly narrowed the request to the "use of informants." Plaintiff further argues he did appeal the FBI's narrowing of his request and his appeal went unanswered. Plaintiff seeks summary judgment on this count arguing the FBI unreasonably narrowed his request and the OIP ignored his appeal.

Plaintiff's request was written as follows:

This is to request all records in your possession regarding events which occurred in, or, around Pikesville, KY on, or, about, April 29, 2017. Specifically, your Joint Terrorism Task Force, working with state, and, local, law enforcement, brought in hundreds of informants, and, law enforcement officers, from around the country to stage two notional "special events", one an alleged "white supremacist" rally by the Traditionalist Workers' Party, the National Socialist Movement, the Global Crusader Order of the Ku Klux Klan, the League of the South, and, others, and the other, a rally by unidentified "antifa", or "anti-fascists". Review of the photographs, and, news accounts, indicate that 80% - 90% of the persons participating on both sides were undercover operatives of your agency, or, other law enforcement.

Thank you for releasing all documents related to your agencies' continued involvement in these phony "extremist" rallies within 20 days.

(Doc. 51-2 at 2). Plaintiff's request was most certainly aimed at gaining information regarding the FBI's use of informants at the Pikeville rally. While a broader interpretation is possible, the Court finds the FBI's understanding of the request was not unreasonable. The FBI's *Glomar* response was appropriate, and it did not violate FOIA by responding that it could not reveal records regarding the use of confidential informants. Defendants are granted summary judgment on Count 7.

### Count 8: FOIA # 1369570 (Teens for Satan)

Summary of FBI Actions: Plaintiff's request for subject was included in his multi-subject letter dated February 19, 2017 at item 9. The FBI issued its determination by letter dated March 22, 2017, advising it had located no main file records. Plaintiff provided additional information by letter dated April 4, 2017 and the FBI conducted an additional search. The FBI advised by letter dated April 20, 2017, that despite conducting an additional search, no records were located. Plaintiff made a new request for the same subject, by letter dated February 11, 2018 at item 1. The FBI advised Plaintiff by letter dated March 19, 2018 that no records were located despite an additional search. Plaintiff filed an administrative appeal with DOJ/OIP by a letter dated March 24, 2016 (received by DOJ/OIP on April 9, 2018) challenging the adequacy of the FBI's search. Plaintiff filed Complaint on April 9, 2018. DOJ/OIP acknowledged receipt of the administrative appeal by letter dated April 20, 2018, and assigned tracking number DOJ-AP-2018-004345 to the appeal. Plaintiff provided additional information on October 28, 2018, stating that despite being advised the FBI could locate no records on this subject, he had received responsive information on both this subject and another (FOIA 1398616-000, KKK Groups in NJ 2004-2008) on October 20, 2018, and enclosed a sampling. Neither of the two documents provided any additional leads that would support another search.

Search Description: Three searches were conducted in an effort to locate responsive records on this subject. Initially, the FBI utilized a search cut-off date of March 22, 2017. It conducted an ST search of the CRS via ACS. The term searched was "Teens for Satan". A second search was conducted using an expanded search cut-off date of April 20, 2017 using the same term and methods. A third search utilized a search cut-off date of March 13, 2018 and included a TP, search of the CRS via ACS and an OTN search of the manual indices. Sentinel was also utilized to search the CRS, via an entities search. The term utilized for the searches was "Teens for Satan". The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing it conducted three separate searches using different date ranges and the terms "Teens for Satan" but failed to locate any responsive records regarding the organization. Defendants argue summary judgment is appropriate as the FBI utilized a reasonable search methodology.

Plaintiff seeks summary judgment arguing he supplemented his request to also seek documents regarding "Joy of Satan" but received no response. Plaintiff argues because the FBI failed to conduct a search for "Joy of Satan" as well as "Teens for Satan" the search was not reasonable, and he is entitled to summary judgment and records regarding the Joy of Satan/Teens for Satan organization.

Plaintiff's initial FOIA request sought records regarding "Teens for Satan" but did not seek records regarding "Joy of Satan." When Plaintiff received the letter informing him that no records were located, he responded with a letter dated March 24, 2018 (Doc. 37-2 at 4). Plaintiff appealed the FBI's claim that it possessed no such records and alleged the claim was false. Plaintiff, again, did not mention Joy of Satan. Plaintiff's appeal was denied by the OIP (Id. at 6-7). On October 28, 2018, Plaintiff sent a letter to David Hardy alleging "Teens for Satan" was part of the "Joy of Satan" group (Id. at 8). Plaintiff did not clearly request records regarding "Joy of Satan," but only mentioned the group in his letter. Additionally, the FBI's searches for this request were conducted well before Plaintiff sent the letter on October 28, 2018. The Court finds Defendants conducted a reasonable search for Plaintiff's actual request and are entitled to summary judgment on Count 8.

**Count 9: FOIA # 1369838 (Citizens Against Hate)**

Summary of FBI actions: Plaintiff's request for this subject was included at item 1 in his multi-subject letter dated February 19, 2017. The FBI advised by letter dated March 27,

2017, no main file records were located. Plaintiff filed an administrative appeal with DOJ/OIP by letter dated March 24, 2017.[6] Plaintiff included this at item 2 of a February 11, 2018 new request. Plaintiff filed Complaint on April 9, 2018. DOJ/OIP acknowledged receipt of the administrative appeal by letter dated April 20, 2018, assigning tracking number DOJ-AP-2018-004350 to the appeal. DOJ/OIP affirmed the FBI's determination by letter dated May 24, 2018, and advised the Plaintiff that if he wanted a cross-reference search conducted by the FBI, he would need to supply sufficient information to enable the FBI to determine if any references located are identifiable to the request subject. No further information was supplied.

Search Description: The FBI utilized a search cut-off date of March 24, 2017 for the initial search. It conducted an ST search of the CRS utilizing ACS. The term "Citizens Against Hate" was used to conduct an ST search of the CRS via ACS, and an OTN search of the manual indices and Sentinel using the same term was also conducted. No main file records were located. Another search was conducted in response to the second request with a search cut-off date of March 13, 2018. An ST search of the CRS using ACS and an OTN search of the manual indices and Sentinel was also conducted. The term searched was "Citizens Against Hate". Again, no records responsive to the request were located. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing two searches were conducted regarding "Citizens Against Hate" and no responsive documents were located.  Plaintiff argues the FBI's search was unreasonable because they did not run a cross-reference search.  The DOJ/OIP affirmed the FBI's determination of this request by letter dated May 24, 2018, and advised Plaintiff that if he wanted a cross-reference search conducted by the FBI he would need to supply sufficient information to enable the FBI to determine if any references located are identifiable to the request subject.  The FBI affirmed no further information was supplied.  Defendants conducted a reasonable search for Plaintiff's actual request and are entitled to summary judgment on Count 9.

**Count 10: FOIA # 1369840 (One People's Project)**

Summary of FBI Actions:  Plaintiff included this subject at item 2 of his multi-subject letter dated February 19, 2017. The FBI responded by letter dated March 27, 2017, no main file records were located. Plaintiff filed a new request on the same subject by letter dated

---

[6] Although dated March 24, 2016, the letter was not received by DOJ/OIP until April 9, 2018. The date stamp on the envelope bears an April 3, 2018 date, indicating the date in Plaintiff's letter was likely incorrect.

February 11, 2018 (item 3), noting the new request was submitted for the purpose of correcting his prior failure to exhaust administrative remedies. Plaintiff filed an administrative appeal of the FBI's no records determination by letter dated March 24, 2016, and further indicated in the appeal letter that he was also seeking a cross-reference search.[7] Plaintiff filed his Complaint with this Court on April 9, 2018. DOJ/OIP acknowledged Plaintiff's administrative appeal on April 20, 2018 and assigned it tracking number DOJ-AP-2018-004346. On May 29, 2018, DOJ/OIP affirmed the FBI's determination and advised Plaintiff to submit additional identifying information concerning the subject of the request to the FBI if he would like to receive cross-reference records. Plaintiff has not submitted additional information that would better assist the FBI in locating identifiable cross-references; however, upon reviewing the information from the appeal and with the filing of the litigation the FBI proactively conducted another search in an effort to locate any potentially responsive cross-references. Potentially responsive records were located and currently await processing.

Search: The FBI utilized a search cut-off date of March 13, 2018 and conducted an ST search of the CRS utilizing ACS. The FBI utilized the following search terms: "The Peoples Project", "The One Peoples Project", "One Peoples Project", "One People's Project", and "The Peoples Project". At the litigation stage, the FBI verified the search, including adding an OTN search of the CRS via Sentinel.

Defendants do not seek summary judgment regarding Count 10 as approximately 200 additional responsive pages currently await processing. The FBI is processing Plaintiff's requests at 500 pages per month. Plaintiff seeks summary judgment arguing there are positive indications records exist regarding this request. Since filing of Plaintiff's motion, Defendants have conducted a cross-reference search and located records which are pending processing.

The Court finds given the large volume and complexity of responding to Plaintiff's request, releasing documents at the rate of 500 pages per month balances the need for transparency in government with the allocation of the FBI's limited resources. Plaintiff is not entitled to summary judgment.

**Count 11: NFP-80763 (August 11, 2017 Training Session)**

Summary of FBI Action: This subject was included in Plaintiff's September 7, 2017 multi-subject FOIA request at item 5. The FBI advised that Plaintiff's request for a

---

[7] See fn. 4 *supra*.

"training session" hosted by two third parties on August 11, 2017 was not reasonably described. The FBI assigned tracking number NFP-80763 and advised Plaintiff by letter dated September 21, 2017, he would need to submit additional specific information before the FBI could conduct a search. By letter dated September 27, 2017, Plaintiff submitted additional correspondence but nothing that documented an official public acknowledgment by the named third parties concerning their alleged involvement in the training session. Further, the allegations appearing in the submitted article did not provide official confirmation of the alleged training event, nor did it provide enough specific information to allow employees to conduct a reasonable search of the CRS. FBI records in the CRS are arranged by subject, victim, or event and the information provided is insufficient. Plaintiff did not appeal the FBI's determination, and instead filed his Complaint with this Court on April 9, 2018.

Search: The request is unperfected; therefore, no search is possible.

Defendants seek summary judgment arguing Plaintiff failed to perfect this request and exhaust his administrative remedies. Defendants contend Plaintiff failed to appeal the FBI's determination that his request was insufficiently detailed even after he attempted to provide clarification. Plaintiff seeks summary judgment arguing he responded to the FBI's letter seeking further information but did not receive notice that his supplement was inadequate, therefore, he constructively exhausted his administrative remedies. The FBI's letter seeking additional information was dated September 21, 2017, and Plaintiff's correspondence responding to the FBI was dated September 27, 2017. There was no further correspondence sent by the FBI and Plaintiff did not appeal.

The Court finds Plaintiff failed to exhaust his administrative remedies as to this request. The September 21, 2017 letter from the FBI informed Plaintiff his FOIA request did not contain enough descriptive information to permit a search of their records. The letter also informed Plaintiff of his right to file an appeal of this determination within ninety (90) days. While Plaintiff sent a letter with additional information, the information provided did not cure the defects and Plaintiff failed to file an appeal as required. Defendants are entitled to summary judgment on

Count 11.

**Count 12:   FOIA #1385029 (Unite the Right Rally)**

> Summary of FBI Action:  This subject was included in Plaintiff's September 7, 2017 multi-subject request letter as items 1 and 2. The FBI acknowledged the request by letter dated September 21, 2017, assigning it FOIA # 1385029. The FBI advised the Plaintiff by letter dated November 15, 2017, that the records requested were exempt from disclosure pursuant to FOIA Exemption (b)(7)(A) because they are located in a pending investigative file and disclosure could reasonably be expected to interfere with enforcement proceedings. Plaintiff filed an administrative appeal by letter dated November 21, 2017. DOJ/OIP acknowledged receipt of the administrative appeal by letter dated December 7, 2017 and assigned it tracking number DOJ-AP-2018-001335. By letter dated December 22, 2017, DOJ/OIP affirmed the FBI's determination. Plaintiff filed his Complaint with this Court on April 9, 2018.

> Search: The FBI conducted an ST search via ACS of the CRS, using the terms "Unite the Right Rally," "Charlottesville Rally" as well as an OTN search of Sentinel using these same terms. One file was located. The FBI verified the accuracy of the search at the litigation stage.

Defendants do not seek summary judgment on Count 12 because the records requested are located in a pending investigative file.   The FBI contends the records requested are exempt from disclosure because they are located in a pending investigative file and disclosure could reasonably be expected to interfere with enforcement proceedings.   The FBI did not release the volume or records associated with the pending investigation because it did not want to provide insight into the scope of the investigation.   Defendants propose rechecking the request at the conclusion of processing of records when the status of the investigation is likely to have changed to closed.

Plaintiff seeks summary judgment arguing the FBI has failed to meet the requirements for an exemption pursuant to (b)(7)(A) because it was not "demonstrated with specificity a logical connection between the information withheld and an identified investigation."   Plaintiff contends the Hardy Declaration fails to identify any investigation and fails to specify what records are being withheld related to that investigation.

The Court finds Plaintiff is not entitled to summary judgment. Plaintiff seeks information regarding the pending investigation into the Unite the Right rally. The Court finds that while the investigation is pending, the FBI does not have to provide insight into the scope or information contained within the investigation. Providing specific information regarding records being withheld could provide Plaintiff with insight, that if released, could interfere with the pending investigation. Plaintiff is not entitled to summary judgment on this count.

## Count 13:   FOIA # 1385038 (Mike Tubbs)

Summary of FBI Actions:   This subject was included as item 4 in Plaintiff's September 7, 2017 multi-subject request letter. The FBI's determination by letter dated September 21, 2017 advised the Plaintiff that before the FBI could conduct a search for records on a living third party, he must submit a privacy waiver, proof of death if deceased, or a justification that the public interest outweighs the third party's privacy interest otherwise the FBI could not confirm nor deny the existence or non-existence of responsive records. The FBI informed Plaintiff it could neither confirm nor deny the existence of records pursuant to FOIA exemptions 6 and 7(C). Although Plaintiff submitted additional correspondence by letter dated September 27, 2017, it did not include the required information that would allow the FBI to conduct a search.

Plaintiff submitted a new multi-subject request dated February 11, 2018 that included this subject as item 4, but again failed to provide the requisite information required. By letter dated March 18, 2018, the FBI again advised the Plaintiff that without proof of death, a privacy waiver, or justification that the public interest outweighs the privacy interest of the third party, the FBI could neither confirm nor deny the existence or non-existence of responsive records pursuant to FOIA Exemptions 6 and 7(C).

Plaintiff included this subject in appeal letter dated March 24, 2016 (received April 9, 2018).[8] Plaintiff filed his Complaint on April 9, 2018. OIP acknowledged receipt of the appeal by letter dated April 20, 2018 and assigned it appeal number DOJ-AP-2018-004348. By letter dated May 11, 2018, OIP affirmed the FBI's determination.

Search: The request remains unperfected; therefore, no search is possible.

Defendants seek summary judgment on Count 13 arguing Plaintiff has not provided

---

[8] FBI believes the 2016 date was a typographical error and the actual letter date was intended to be 2018.

documentation establishing that the public interest in disclosure outweighs the Third Party's privacy interests, thereby warranting a *Glomar* response.   In response, Plaintiff argues there is a public interest because he believes Tubbs was broadcast live on CNN clubbing Antifa demonstrators during the rally yet managed to evade arrest.   Plaintiff alleges Tubbs was working for the FBI and deliberately sparked violence at Charlottesville which ultimately led to the murder of Heather Heyer.   Defendants contend the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties.

Plaintiff seeks summary judgment on Count 13 arguing there is a public interest in the release of records that would expose that the FBI's counter-terrorism units have been involved in frequent murders over the past two decades.   Plaintiff argues that because he believes Tubbs was broadcast on television engaged at violence at the rally, he has waived his privacy interest as to the existence of responsive records.

The fact that someone is shown on national television does not indicate that individual has waived his privacy interests as to the existence of records held by a federal agency.   Plaintiff failed to submit a privacy waiver or proof of death of the third party on which he was seeking records. Further, Plaintiff's purported public interest is premised on the fact he believes he saw "Mike Tubbs" on a television broadcast.   Plaintiff failed to provide the FBI with any information to support his public interest theory.   Plaintiff's declaration as to what he believes he saw on CNN is not sufficient to outweigh the privacy interest of the third-party.   The Court finds the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties.   Defendants are entitled to summary judgment on Count 13.

**Count 14:   FOIA 1385045 (Vanguard America)**

Summary of FBI Actions:   Plaintiff submitted a multi-subject request dated September 7,

2017 that included this subject as item 6. The FBI acknowledged the request by letter dated September 21, 2017. The FBI advised no responsive records could be located by letter dated March 8, 2018. Plaintiff appealed by letter dated March 30, 2018. OIP acknowledged the appeal by letter dated April 20, 2018, assigning it DOJ-AP-2018-004342. By letter dated June 7, 2018, OIP affirmed the FBI's determination.

Search: The FBI conducted an ST search of the CRS via ACS and an OTN search of the CRS via Sentinel on September 20, 2017. The term searched was "Vanguard America". No responsive records were located. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing two searches were conducted regarding Vanguard America and no responsive documents were located. Plaintiff argues the FBI's search was unreasonable because they did not run a cross-reference search. Plaintiff, however, did not specifically request any cross-reference search. The DOJ/OIP affirmed the FBI's determination of this request by letter dated June 7, 2018. The Court finds Defendants conducted a reasonable search for Plaintiff's actual request and are entitled to summary judgment on Count 14.

## Count 15: FOIA # 1390703 (Sacco Vandal, Dillon Hopper, Alexander Dugin, Richard Spencer, and Billy Roper)

Summary of FBI Actions: Plaintiff submitted a multi-subject request dated November 12, 2017, which included requests for information on five third parties identified at items 5-9 of the request. Plaintiff provided no privacy waivers or proof of death for any of the five third parties. By letter dated December 5, 2017, the FBI advised Plaintiff it could neither confirm nor deny the existence of third-party records absence proof of death or a privacy waiver, pursuant to FOIA Exemptions 6 and 7(C). By letter dated December 12, 2017, Plaintiff asserted release of information on these five individuals was in the public interest and in support, supplied news articles from publications such as The Nationalist Times and American Free Press and a copy of his own unsigned affidavit filed in another civil action. These items were insufficient to overcome the privacy interests of the third parties and therefore the matter was not re-opened. Plaintiff did not submit an appeal.

Search: The request remains unperfected; therefore, no search is possible.

Defendants seek summary judgment on Count 15 arguing Plaintiff failed to exhaust his administrative remedies because he did not perfect his request by providing a privacy waiver or proof of death on the third parties and he failed to appeal. In response, Plaintiff stated he would

"voluntarily dismiss" this count as it pertains to Vandal, Hopper, and Roper. Regarding the requests for records on Dugin and Spencer, Plaintiff proffers a public interest justification for the records. According to Plaintiff, Dugin is a Russian intelligence asset and advisor to Vladimir Putin who has travelled to the United States to visit "white supremacist extremists." Plaintiff asserts a Russian ideological public figure should not have a privacy interest in FBI records. As to Spencer, Plaintiff contends he was the organizer of the Unite the Right rally and a *Glomar* response is improper because he must be the subject of an ongoing FBI investigation.

Defendants acknowledge they received Plaintiff's December 12, 2017 letter asserting a public interest but argue the news articles from The Nationalist Times and American Free Press along with an unsigned affidavit were insufficient to overcome the privacy interests of the third parties. Defendants argue Plaintiff's assertion contained no official acknowledgement by the FBI concerning the existence of records regarding third parties, nor did it provide a privacy waiver or proof of death as requested. Defendants seek summary judgment for failure to exhaust his administrative remedies because Plaintiff filed his complaint without filing an administrative appeal. Additionally, Defendants contend the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties.

The Court finds Plaintiff failed to exhaust his administrative remedies and the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties. Defendants are entitled to summary judgment on Count 15.

**Count 16: FOIA # 1390712 (National Policy Institute)**

Summary of FBI Actions: Plaintiff submitted a multi-subject request dated November 12, 2017, which included this subject as its first item. By letter dated December 5, 2017, the FBI advised no responsive records could be located. By letter dated December 12, 2017, Plaintiff supplied additional information through news articles from publications such as The Nationalist Times and American Free Press and by providing a copy of an unsigned

affidavit from himself filed in another civil action. These items did not provide any additional terms or other information that could impact the FBI's search, therefore a new search was not conducted. Plaintiff did not submit an appeal.

Search: The FBI conducted a search of its CRS using the search term "National Policy Institute". An ST search via ACS and an OTN search via Sentinel was utilized. No main file records were located. Plaintiff did not request a cross-reference search in his letter. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing Plaintiff failed to perfect his request and exhaust his administrative remedies. The FBI received Plaintiff's additional correspondence, but the items included did not provide any additional terms or other information that could impact the FBI's search; therefore, a new search was not conducted. Defendants contend Plaintiff failed to appeal. Plaintiff seeks summary judgment arguing he responded to the FBI's letter and provided additional information but did not receive a response, therefore, he constructively exhausted his administrative remedies.

The Court finds Plaintiff failed to exhaust his administrative remedies as to this request. The December 5, 2017 letter informed Plaintiff no responsive records were located. The letter also informed Plaintiff of his right to file an appeal of this determination within ninety (90) days. While Plaintiff sent a letter with additional information, the information provided did not include additional search terms or request a cross-reference search and Plaintiff failed to file an appeal as required. The Court finds Defendants conducted a reasonable search and are entitled to summary judgment on Count 16.

**Count 17:    FOIA #1390754 (October 2017 White Lives Matter Rally in Tennessee)**

Summary of FBI Actions:   Plaintiff submitted a multi-subject request dated November 12, 2017, which included this subject at item 3. By letter dated December 5, 2017, the FBI acknowledged the Plaintiff's request. Records were located and are currently awaiting processing by a FOIA analyst. Plaintiff filed his Complaint on April 9, 2018.

Search: The FBI conducted a search of the CRS using the search terms "White Lives

Matter" and limited to records pertaining specifically to an October 2017 event in Tennessee. An ST search of the CRS via ACS was utilized as well as an OTN search of the CRS via Sentinel. Approximately 436 pages of potentially responsive records were located. The FBI verified the accuracy of the search at the litigation stage.

Defendants do not seek summary judgment regarding Count 10 as approximately 436 additional responsive pages currently await processing. The FBI is processing the request at 500 pages per month. Plaintiff's motion seeks summary judgment on Count 17 but makes no specific argument as to why he is entitled to summary judgment regarding this count. Plaintiff has not met his burden and is not entitled to summary judgment.

## Count 18:   FOIA # 1390777 (Identity Europa)

Summary of FBI Actions:   Plaintiff submitted a multi-subject request dated November 12, 2017, which included this subject at item 2. By letter dated December 5, 2017, the FBI advised Plaintiff it could locate no records responsive to the request. By letter dated December 12, 2017, Plaintiff supplied additional information through news articles from publications such as The Nationalist Times and American Free Press and by providing a copy of an unsigned affidavit from himself filed in another civil action. These items did not provide any additional terms or other information that could impact the FBI's search, therefore a new search was not conducted. Plaintiff did not submit an appeal. Plaintiff filed his Complaint on April 9, 2018.

Search: The FBI conducted a search of the CRS using the search terms "Identity Europa" as provided in the request. In addition, based on other similar requests made to the FBI, the term "Identity Evropa" and "National Youth Front" were also searched. The FBI searched the CRS via an OTN search in Sentinel and an ST search of the CRS via ACS. No responsive main file records were located. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing no records were responsive to his request and Plaintiff failed to perfect his request. The FBI received Plaintiff's additional correspondence, but the items included did not provide any information that could locate records. Defendants contend Plaintiff failed to appeal. Plaintiff seeks summary judgment arguing he responded to the FBI's letter and provided additional information but did not receive a response, therefore, he constructively exhausted his administrative remedies.

The Court finds Plaintiff failed to exhaust his administrative remedies as to this request. The December 5, 2017 letter informed Plaintiff no responsive records were located. The letter also informed Plaintiff was his right to file an appeal of this determination within ninety (90) days. While Plaintiff sent a letter with additional information, the information provided did not provide additional search terms or request a cross-reference search and Plaintiff failed to file an appeal as required. The Court finds Defendants conducted reasonable searches and are entitled to summary judgment on Count 18.

**Count 19:   FOIA #1391518 (Anti-Communist Action)**

> Summary of FBI Actions:   Plaintiff submitted a multi-subject request dated November 12, 2017, which included this subject at item 4. By letter dated December 15, 2017, the FBI advised Plaintiff it could locate no main file records responsive to his request. Plaintiff provided additional information by letter dated December 27, 2017, noting that the subject is associated with a White Nationalist rally that occurred in Shelbyville, TN in late October 2017. By letter dated January 5, 2018, the FBI advised that despite an additional search, no responsive records could be located. Plaintiff appealed the FBI's response by letter dated March 30, 2018. OIP assigned Plaintiff's DOJ-AP-2018-004342 to Plaintiff's appeal. Plaintiff filed his Complaint on April 9, 2018.

> Search: The FBI conducted a main file ST search of the CRS using ACS, an OTN search of Sentinel, and an OTN search of the manual index cards utilizing the term "Anti Communist Action". The search cut-off date was December 15, 2017. In January 2018, another search was conducted utilizing the additional information and again. The FBI conducted an ST search of the CRS utilizing ACS and an OTN search of the CRS utilizing Sentinel, no records were located. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing five searches were conducted regarding Anti-Communist Action and no responsive documents were located. Plaintiff argues the FBI's search was unreasonable because they did not run a cross-reference search. Plaintiff, however, did not specifically request any cross-reference search. The Court finds Defendants conducted a reasonable search for Plaintiff's actual request and are entitled to summary judgment on Count 19.

**Count 20:   FOIA # 1385031 (Ike Baker)**

Summary of FBI Actions: This subject was included in Plaintiff's September 7, 2017 multi-subject request letter at item 3. The FBI's determination by letter dated September 21, 2017 advised the Plaintiff that before the FBI could conduct a search for records on a living third party, he must submit a privacy waiver, proof of death if deceased, or a justification that the public interest outweighs the third party's privacy interest otherwise the FBI could not confirm nor deny the existence or non-existence of responsive records. The FBI informed Plaintiff it could neither confirm nor deny the existence of records pursuant to FOIA exemptions 6 and 7(C). Although Plaintiff submitted additional correspondence by letter dated September 27, 2017, it did not include the required information that would allow the FBI to conduct a search.

Plaintiff submitted a new multi-subject request dated February 11, 2018 that included this subject at item 5, but again failed to provide the requisite information required. By letter dated March 18, 2018, the FBI again advised the Plaintiff that absent proof of death, a privacy waiver, or justification that the public interest outweighs the privacy interest of the third party, the FBI could neither confirm nor deny the existence or non-existence of responsive records pursuant to FOIA Exemptions 6 and 7(C).

Plaintiff included this subject in appeal letter dated March 24, 2016 (received April 9, 2018)[9]. Plaintiff filed his Complaint on April 9, 2018. OIP acknowledged receipt of the appeal by letter dated April 20, 2018 and assigned it appeal number DOJ-AP-2018-004348. By letter dated May 11, 2018, OIP affirmed the FBI's determination.

Search: The request remains unperfected; therefore, no search is possible.

Defendants seek summary judgment on Count 20 arguing Plaintiff has not provided documentation establishing that the public interest in disclosure outweighs the Third Party's privacy interests, thereby warranting a *Glomar* response. In response, Plaintiff argues there is a public interest because he believes Baker was a white nationalist demonstrator trained by the FBI to attack the Antifa counterdemonstrators at the Charlottesville Unite the Right rally. Defendants contend the FBI properly denied the request pursuant to Glomar based on Exemptions 6 and 7(c) and the privacy interest of third parties.

Plaintiff asks the Court not to make a determination as to Count 20 until he receives records

---

[9] FBI believes the 2016 date was a typographical error and the actual letter date was intended to be 2018.

regarding Count 12.  Plaintiff contends he needs the records regarding the Unite the Right rally in order to prove there are responsive records to this request.

Plaintiff failed to submit a privacy waiver or proof of death of the third party on which he was seeking records.  Further, Plaintiff admits he has little evidence to support his purported public interest.   The Court finds the FBI properly denied the request pursuant to *Glomar* based on Exemptions 6 and 7(c) and the privacy interest of third parties.   Defendants are entitled to summary judgment on Count 20.

**Count 21:   FOIA # Not Assigned (Willis Carto, Michael Piper, Victor Thorn, Lou Barletta, Michael Burks, John Wyczlinski, Christopher John Brooks, Dustin Ryan Perry, Kent Ryan McLellan, Verlin Clifford Lewis, Paul Wilard Jackson, Richard Adam Stockdale, Marcus Faella, Patricia Faella, Diane Stephanie Stacy, Luke Leger, Jon Morgan, Dan Freiberg, Randall Kraeger, Brien James)**

Summary of FBI Actions:   By letter dated February 27, 2018, plaintiff submitted a 37 subject request letter (seeking both main and reference files), a portion of which were third parties identified in Plaintiff's Complaint at Count 21.[10] Plaintiff did not provide proof of death or privacy waivers for the third party individuals. The FBI is unable to locate an assigned FOIA tracking number for this part of Plaintiff's request or a final determination letter. Plaintiff filed his complaint on April 9, 2018. The FBI can neither confirm nor deny the existence of third party records without proof of death or a privacy waiver, pursuant to FOIA Exemptions 6 and 7(C).

Defendants seek summary judgment arguing the records of these living third parties are exempt pursuant to Exemption 6 and 7(c) and *Glomar*.   Defendants state that if Plaintiff provides proof of death or a privacy waiver for any of the third parties, the FBI will reopen the request and conduct a search.

Plaintiff states he "voluntarily dismisses" Wyczlinski, Brooks, Perry, McLellan, Lewis, Stockdale, Marcus Faella, Patricia Faella, Leger, Barletta, and Kraeger from this count.   Plaintiff argues the FBI cannot invoke *Glomar* to withhold records two years after the request and for the

---

[10]  These third-party individuals were listed in the request as items 5-8, 15-26, 28-29, 31, and 33.

first time in the motion.  Plaintiff states that Carto, Piper, and Thorn are deceased.  Plaintiff alleges Morgan and Friberg are barred by the State Department from entering the United States because of their relationship with Dugin and therefore some FBI records must exist.  Finally, Plaintiff states Brian James was an FBI informant and asks the Court to withhold ruling on the request as to James until he receives records from other requests so that he can demonstrate public interest.

While there was no final determination letter issued in the 41 days between the date of Plaintiff's request and the date he filed suit, Plaintiff failed to perfect this request.  As Plaintiff has been informed repeatedly, the FBI can neither confirm nor deny the existence of third-party records without proof of death or a privacy waiver, pursuant to FOIA Exemptions 6 and 7(C).  Plaintiff has indicated a number of these parties are now deceased.   If that is the case, as indicated by the FBI's response, when Plaintiff provides proof of death or a privacy waiver for any of the third parties, the FBI will reopen the request and conduct a search.   As Plaintiff failed to perfect this request, Defendants are entitled to summary judgment on Count 21.

**Count 22: FOIA # 1398616 (New Jersey Ku Klux Klan groups 2004-2008)**

> Summary of FBI Actions:  Plaintiff included this subject (item 9) in his multi-subject request dated February 27, 2018, seeking both main and reference files. By letter dated March 19, 2018, the FBI advised Plaintiff it could locate no records responsive to his request. Plaintiff submitted an administrative appeal to OIP by letter dated March 29, 2018 alleging the FBI employed an exclusion. OIP assigned the appeal DOJ-AP-2018-004407. Plaintiff filed his Complaint on April 9, 2018. By letter dated June 1, 2018, OIP affirmed the FBI's determination. Plaintiff provided additional correspondence to the FBI on October 28, 2018; however, the information submitted by Plaintiff provided nothing additional that would warrant further or a different search.

> Search: The FBI conducted a search of the CRS. An ST via ACS utilized the following terms: "Ku Klux Klan" "KKK" "Ku Klux Klan New Jersey" "KKK New Jersey" "KKK in New Jersey" "Ku Klux Klan NJ" "KKK NJ" "Ku Klux Klan In NJ" "KKK in NJ". Next, an OTN search via ACS was conducted using the following terms "Ku Klux Klan" "KKK" "Ku Klux Klan New Jersey" "KKK New Jersey" "Ku Klux Klan In New Jersey" "Ku Klux

Klan NJ", "KKK NJ". The search was limited to records originating in the Newark and Philadelphia field offices between 2004 and 2008. The search cut-off date was March 13, 2018. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing searches were conducted regarding New Jersey KKK Groups and no responsive documents were located. Plaintiff argues records should exist citing an exhibit labelled "J(p)-(s)"[11] and asserts the FBI's search was unreasonable because they did not run a cross-reference search. The Court finds Defendants conducted a reasonable search using multiple search terms for Plaintiff's request and Defendants are entitled to summary judgment on Count 22.

## Count 23:   FOIA # 1398619 (Outlaw Hammerskins)

Summary of FBI Actions:   Plaintiff included this subject (item 35) in his multi-subject request dated February 27, 2018, seeking both main and reference files. By letter dated March 19, 2018, the FBI acknowledged receipt of the Plaintiff's request. Plaintiff filed the instant Complaint on April 9, 2018. By letter dated April 30, 2018, the FBI advised Plaintiff that although potentially responsive records were located it determined the records contain subject matter that the Federal Bureau of Prisons has categorized as prohibited within its facility and therefore the request would be closed. Plaintiff was also advised that should he provide an alternative address, the request would be reopened for processing. Plaintiff submitted additional correspondence on May 3, 2018, challenging the FBI's statement that the prison location prohibits such materials and again requested the responsive records be mailed to his prison address.

Search: The FBI conducted an ST search of the CRS via ACS using the term "Outlaw Hammerskins". The FBI also conducted an OTN search via ACS using the terms "OHS" and "Indiana Outlaw Hammerskins" and "Outlaw Hammerskins". An OTN search via Sentinel was also conducted utilizing the terms "Outlaw Hammerskins" "OHS" and "Indiana Outlaw Hammerskins". The FBI searched for both main file and cross-reference records. A search cut-off date of March 13, 2018 was used. The FBI verified the accuracy of the search at the litigation stage.

Approximately 850 additional pages of potentially responsive records were located in the search; however, should Plaintiff wish to re-open this request, the FBI cannot proceed with processing this request without authorization to send non-exempt records responsive to this request to an alternative address.

---

[11] The Court is unable to identify "Exhibit J(p)-(s)" in Plaintiff's filings.

Defendants seek summary judgment on Count 23 arguing due to Prison policy the subject matter contained within these records cannot be sent to the address provided by the requester. Plaintiff responded to the motion stating the records could be released on CD to the Derwood, Maryland address on file, rather than to his prison address. Plaintiff seeks summary judgment arguing the FBI has records and has failed to produce them.

The Court finds Defendants appropriately responded to this request in compliance with BOP policy. Refusal to send prohibited materials to a prison address does not violate FOIA. The FBI appropriately responded by offering to send the responsive records to an alternative address. Defendants are entitled to summary judgment on Count 23.

## Count 24:   FOIA # 1398644 (Barnes Review, a historical magazine based in Washington DC and Los Angeles, CA)

Summary of FBI Actions: Plaintiff included this subject at item 2 in his February 27, 2018 multi-subject request, seeking both main and reference files. By letter dated March 19, 2018, the FBI acknowledged receipt of the request. By letter dated April 3, 2018, the FBI advised the Plaintiff it could not locate any records responsive to his request. Plaintiff filed the instant Complaint on April 9, 2018, and filed his administrative appeal with OIP by letter dated April 12, 2018. OIP acknowledged the appeal by letter dated May 7, 2018, assigning it DOJ-AP-2018-004786.   On June 8, 2018, OIP advised Plaintiff it affirmed the FBI's response.

Search: The FBI conducted an ST search of the CRS via ACS using the terms "Barnes Review" and "TBR". An OTN search of both Sentinel and ACS was conducted using these same terms. The search cut-off date was March 13, 2018. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing two searches were conducted regarding The Barnes Review and no responsive documents were located. Plaintiff argues the FBI's search was unreasonable because they did not run a cross-reference search. The DOJ/OIP affirmed the FBI's determination of this request by letter dated June 8, 2018.

The Court finds Defendants conducted a reasonable search of main files, but Defendants

fail to state whether they conducted a cross-reference search. However, Plaintiff failed to exhaust

his administrative remedies as to this request because he did not appeal the FBI's determination

prior to filing suit. Defendants are entitled to summary judgment on Count 24.

**Count 25: FOIA # 1398672 (Ku Klux Klan rally, Antietam, Maryland 2006)**

> Summary of FBI Actions: Plaintiff submitted a request for this subject as item 10 of his
> February 27, 2018 letter seeking both main file records and cross-references. The FBI
> advised by letter dated March 19, 2018 no responsive records were located. Plaintiff
> submitted an administrative appeal to OIP by letter dated March 29, 2018 alleging the FBI
> employed an exclusion. Plaintiff filed the instant Complaint on April 9, 2018. OIP
> acknowledged receipt of the appeal by letter dated April 20, 2018, assigning it DOJ-AP-
> 2018-004347. OIP affirmed the FBI's "no records" determination by letter dated June 1,
> 2018. Plaintiff sent additional correspondence by letter dated September 30, 2018, advising
> that he had received documents in a separate litigation and request (16-cv-948) identifying
> the existence of responsive records on this subject [FBI(16cv948)-2909].

> Search: The FBI conducted an ST search of the CRS via ACS using the following terms:
> "Ku Klux Klan Rally", "KKK Rally", "Antietam", "Antietam, Maryland", "Antietam,
> MD", "Ku Klux Klan Antietam", and "KKK Antietam". The FBI also conducted an OTN
> search using the same terms. The location and date were used as limiters, as well as a search
> cut-off date of March 13, 2018. The FBI included main files and cross-references in the
> search. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing searches were conducted regarding Antietam

Maryland KKK Rally and no responsive documents were located. Plaintiff argues records should

exist and because the FBI did not locate such records the search could not have been reasonable.

The DOJ/OIP affirmed the FBI's determination of this request by letter dated June 1, 2018. The

Court finds Defendants conducted a reasonable search for Plaintiff's request and Defendants are

entitled to summary judgment on Count 25.

**Count 26: FOIA # 1398724 (Ku Klux Klan rally, Hazelton, Pennsylvania 2007)**

> Summary of FBI Actions: Plaintiff submitted a request for this subject as item 11 of his
> February 27, 2018 letter seeking both main file records and cross-references. The FBI
> advised by letter dated March 19, 2018, the FBI advised Plaintiff it could locate no records
> responsive to the request. Plaintiff submitted an administrative appeal to OIP by letter dated
> March 29, 2018 alleging the FBI employed an exclusion. Plaintiff filed the instant

Complaint on April 9, 2018. OIP acknowledged the appeal, assigning it DOJ-AP-2018-004408. By letter dated April 27, 2018, OIP advised it was affirming the FBI's determination.

Search: The FBI conducted an ST and OTN search of the CRS via ACS using the following terms: "Ku Klux Klan Hazelton", "Ku Klux Klan Hazelton, PA", Ku Klux Klan Hazelton, Pennsylvania", "KKK Hazelton", "KKK Hazelton, PA", "KKK Hazelton, Pennsylvania", "Hazelton", "Hazelton, PA", "Hazelton, Pennsylvania". The location and date were used as limiters, as well as a search cut-off date of March 13, 2018. The FBI included main files and cross-references in the search. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment arguing searches were conducted regarding Hazelton, PA KKK rally and no responsive documents were located. Plaintiff argues records should exist and because the FBI did not locate such records the search could not have been reasonable. The DOJ/OIP affirmed the FBI's determination of this request by letter dated April 27, 2018. The Court finds Defendants conducted a reasonable search for Plaintiff's request and Defendants are entitled to summary judgment on Count 26.

## Count 27: FOIA # 1399310 (Arktos, a book publishing company based, at different times, in Britain, Hungary, and India)

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 27 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 23, 2018. By letter dated March 28, 2018, the FBI informed Plaintiff it could locate no records responsive to the subject of his request. Plaintiff filed the instant Complaint on April 9, 2018, and Plaintiff submitted an administrative appeal to DOJ/OIP by letter dated May 3, 2018. OIP acknowledged receipt of the appeal by letter dated May 30, 2018, assigning it DOJ-AP-2018-005736. By letter dated July 11, 2018, OIP affirmed the FBI's determination.

Search: The FBI conducted two searches for responsive records. Initially, the FBI only searched for main file records. In that search, the FBI conducted an ST search of the CRS via ACS using the terms "Arktos" and "Arktos Media". It also conducted an OTN search of the CRS via Sentinel using the same terms. The search cut-off date was March 23, 2018. Next, the FBI (realizing cross-references had been omitted during the initial search) repeated the same searches but including cross-references. The search cut-off for the second search was March 30, 2018. The FBI verified the accuracy of the search at the litigation stage.

Defendants seek summary judgment on Count 27 arguing no records responsive to Plaintiff's request were located. Plaintiff does not object to Defendants' motion on this Count. As Plaintiff does not object, the Court grants Defendants summary judgment on Count 27.

**Count 28:   FOIA # 1399311 (Volksfront, a skinhead organization in the Northwest United States)**

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 30 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 23, 2018. Plaintiff filed the instant Complaint on April 9, 2018. Plaintiff was advised by letter dated April 20, 2018 that the subject of the request is characterized as material prohibited within his prison facility and therefore the FBI was closing the request until an alternative address could be provided. By letter dated April 27, 2018, Plaintiff provided an alternative address. By letter dated May 21, 2018, the FBI acknowledged the re-opening of Plaintiff's request for further processing. By letter dated July 9, 2018, the FBI provided 184 pages of information previously processed for another requester at no charge, and informed Plaintiff additional pages were available for processing. Plaintiff was asked to respond if he also wished to receive those pages. By letter dated August 2, 2018, Plaintiff filed an appeal with DOJ/OIP concerning the FBI's redactions on the previously processed pages he received. In early August Plaintiff responded to the FBI's July 9, 2018 letter, advising he would like to receive the additional material. The FBI advised Plaintiff by letter dated August 14, 2018, approximately 8,518 pages of additional potentially responsive records exist and if he wished to receive all material on CD he would owe approximately $270.00 in duplication fees (or $425.90 if in paper, to the alternative address). Plaintiff was also advised he would need to pay 50% of the estimated cost upfront before processing would begin ($135 for release on CDs or $212.95 for paper) and was asked to respond in 30 days or the request would be closed. On or about August 22, 2018, Plaintiff responded advising he was willing to pay the estimated duplication costs for releases on CD to the alternate address provided; however, he did not enclose payment. By letter dated August 23, 2018, OIP acknowledged receipt of Plaintiff's appeal concerning the previously processed material, assigning it DOJ-AP-2018-007813. By letter dated September 28, 2018, OIP responded to Plaintiff's appeal, advising it upheld the FBI's determinations as to FOIA Exemptions 1, 3, 6, 7(C), 7(D), and 7(E); however, it would also refer the Exemption 1 information to DOJ's Department Review Committee (DRC) to determine if the information should remain classified.

Plaintiff submitted payment in the amount of $135.00 on or about August 13, 2019, and the request has been re-opened for processing of the remaining records as part of this litigation.

Search: The FBI conducted an ST search of the CRS via ACS using the term "Volksfront". It also conducted an OTN search using Sentinel. The search cut-off date utilized was March

23, 2018 and the search included main files and cross-references. The search was verified at the litigation stage. Potentially responsive records were located during the search.

Defendants do not seek summary judgment regarding Count 28 as approximately 10,668 additional responsive pages currently await processing and 219 media items await processing. The FBI is processing the request at 500 pages per month. Plaintiff does not seek summary judgment on this Count.

**Count 29:   FOIA # 1399312 (Ohio State Skinheads)**

Summary of FBI Actions:   Plaintiff submitted a request for this subject as item 34 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 23, 2018. Plaintiff filed the instant Complaint on April 9, 2018. Plaintiff was advised by letter dated April 20, 2018 that the subject of the request is characterized as material prohibited within his prison facility and therefore the FBI was closing the request until an alternative address could be provided. By letter dated May 29, 2018, the FBI advised the Plaintiff the request had been reopened for further processing. The FBI advised Plaintiff by letter dated June 27, 2018, the FBI had completed its search for potentially responsive records and no responsive records were located.

Search: The FBI conducted an ST search of the CRS via ACS using the term "Ohio State Skinheads". It also conducted an OTN search using Sentinel. The search cut-off date utilized in the search was March 28, 2018 and both main files and cross-references were included in the search. The search was verified at the litigation stage. No responsive records were located during the search.[12] The search cut-off date utilized was May 30, 2018.

Defendants seek summary judgment arguing searches were conducted regarding Ohio State Skinheads and no responsive documents were located. Plaintiff argues because records were located in a cross-reference search but not provided, the FBI has failed to comply with the FOIA request. The FBI determined the cross-referenced hits mentioned Ohio State Skinheads, but were not about the group itself.

---

[12] The FBI did locate the term "Ohio State Skinheads" but determined these hits were only mere mentions of the group and not substantively about the group itself. These non-substantive mere mentions were considered by the FBI non-responsive to the request for information concerning the group.

The Court finds the FBI conducted a reasonable search. In every FOIA request the agency determines what records are and are not responsive to the request. Here, the FBI has indicated there were no records responsive to Plaintiff's request. Defendants are entitled to summary judgment on Count 29.

**Count 30:   FOIA # 1398640 (The Spotlight, a Washington, DC area newspaper)**

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 4 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 19, 2018. By letter dated March 28, 2018, the FBI advised Plaintiff that "unusual circumstances" [13] applied to the processing of the request. Plaintiff filed the instant Complaint on April 9, 2018.

Search: The FBI conducted an ST search of the CRS via ACS and an OTN search of the CRS via ACS, with both searches including the terms "Spotlight" and "The Spotlight". Main files and cross-references were included in the search. The search cut-off date was March 13, 2018. Potentially responsive records were located. The search was verified at the litigation stage.

Defendants do not seek summary judgment regarding Count 30 as approximately 204 additional responsive pages currently await processing and the FBI is processing the request at 500 pages per month. Plaintiff seeks summary judgment arguing the FBI has responsive records and has failed to promptly provide them.

The Court finds given the large volume and complexity of responding to Plaintiff's request, releasing documents at the rate of 500 pages per month balances the need for transparency in government with the allocation of the FBI's limited resources. Plaintiff is not entitled to summary judgment.

---

[13] Unusual circumstances means the FBI has determined that one or more of the following scenarios apply: (1) there is a need to search for and collect records from field offices and/or other offices that are separate from the FBI Record/Information Dissemination Section (RIDS); (2) there is a need to search for, collect, and examine a voluminous amount of separate and distinct records; or (3) there is need for consultation with another agency or two or more DOJ components.

**Count 31:   FOIA # 1398647 (American Free Press, a Washington, DC area newspaper)**

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 1 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 19, 2018. By letter dated March 28, 2018, the FBI advised Plaintiff that "unusual circumstances" applied to the processing of the request. Plaintiff filed the instant Complaint on April 9, 2018. By letter dated April 20, 2018, the FBI advised Plaintiff it had completed its search and no records responsive to his request were located. Plaintiff filed an administrative appeal with DOJ/OIP by letter dated May 3, 2018. OIP acknowledged receipt of the appeal by letter dated May 30, 2018, assigning it DOJ-AP-2018-005735. OIP advised Plaintiff by letter dated September 14, 2018, it was affirming the FBI's determination.

Search: The FBI conducted an ST search of the CRS via ACS and an OTN search of the CRS via ACS, with both searches including the term "American Free Press". The FBI also searched the CRS via an OTN search of Sentinel using the same term. The search cut-off date was March 13, 2018. No responsive records were located. The search was verified at the litigation stage.

Defendants seek summary judgment on Count 31 arguing no records responsive to Plaintiff's request were located.   Plaintiff argues the FBI's search was unreasonable because they did not run a cross-reference search.   The DOJ/OIP affirmed the FBI's determination of this request by letter dated September 14, 2018.   Plaintiff does not seek summary judgment regarding this Count.

The Court finds Defendants conducted a reasonable search of main files, but Defendants fail to state whether they conducted a cross-reference search.   Regardless, Plaintiff failed to exhaust his administrative remedies as to this request because he did not appeal the FBI's determination prior to filing suit.   Defendants are entitled to summary judgment on Count 31.

**Count 32:   FOIA # 1398777 (New Order, a group in Wisconsin, formerly known as the National Socialist White People's Party)**

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 13 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 23, 2018 and advised Plaintiff that previously processed records on this subject are available in the FBI's FOIA Library (The Vault). Plaintiff was also advised that additional records potentially responsive to the

request may exist and if he would like a search for additional records he would need to inform the FBI of his decision. Plaintiff filed the instant Complaint on April 9, 2018. By letter dated April 21, 2018, the Plaintiff filed an administrative appeal with DOJ/OIP advising as a prisoner he lacked access to the FBI's website and requested an electronic copy of the records be sent to an alternative address and a paper copy be sent to him at prison. OIP acknowledged receipt of the appeal by letter dated May 15, 2018, assigning it DOJ-AP-2018-005186. OIP advised by letter dated June 21, 2018 it was remanding the request to the FBI for further processing of the records. On August 3, 2018, in response to OIP's remand, the FBI advised Plaintiff it was reopening the request. By letters dated August 17, 2018, the FBI forwarded 120 pages of previously processed records (a portion of the records available on the FBI's FOIA Library) at no charge to the alternative address he provided. Plaintiff was again advised that if the previously processed material did not satisfy his needs he would need to request an additional search. By a second letter that same date, the FBI advised Plaintiff that the records could not be sent to the prison as they are considered prohibited by the facility, and instead an electronic copy was sent to the alternate address noted in his appeal letter. Plaintiff responded by letter dated August 30, 2018, acknowledging the 120 pages were received and advising he wished to receive additional material specifically relating to New Order, including both main file records and cross-references.

Search: The FBI conducted a search at the litigation stage using the terms: "New Order". An ST search of the CRS via ACS and an OTN search via Sentinel was conducted. The search cut-off date utilized was April 4, 2019. Approximately 7,540 pages of potentially responsive records were located.

Defendants do not seek summary judgment regarding Count 32 as approximately 7,504 additional responsive pages currently await processing. The FBI is processing the request at 500 pages per month. Plaintiff seeks summary judgment arguing he only received 120 pages of records and is entitled to all of the records.

The Court finds given the large volume and complexity of responding to Plaintiff's request, releasing documents at the rate of 500 pages per month balances the need for transparency in government with the allocation of the FBI's limited resources. Plaintiff is not entitled to summary judgment.

**Count 33:   FOIA # 1398811 (Imperial Knights of the Ku Klux Klan)**

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 36 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI

acknowledged receipt of the request by letter dated March 19, 2018. Plaintiff filed the instant Complaint on April 9, 2018. The FBI advised Plaintiff in a letter dated April 12, 2018, previously processed records on this subject are available in the FBI's FOIA Library (The Vault). Plaintiff was also advised that additional records potentially responsive to the request may exist and if he would like a search for additional records he would need to inform the FBI of his decision. By letter dated April 17, 2018, the Plaintiff filed an administrative appeal with DOJ/OIP advising as a prisoner he lacked access to the FBI's website and requested a paper copy be sent to him at prison. OIP acknowledged receipt of the appeal by letter dated May 10, 2018, assigning it DOJ-AP-2018-004964. OIP advised by letter dated September 13, 2018 it was remanding the request to the FBI for the purpose of sending paper copies of the records.

Search: The FBI conducted a ST and OTN search of the CRS via ACS, an ST and OTN search via Sentinel, and a search of the manual indices via an OTN search using the following terms, "Imperial Knights of the Ku Klux Klan", "Imperial Knights of the Ku Klux Klan of America", and "IKA". The search cut-off date utilized was March 14, 2018. Potentially responsive records were located.

Defendants do not seek summary judgment regarding Count 33 as approximately 340 additional responsive pages currently await processing. The FBI is processing the request at 500 pages per month. Plaintiff seeks summary judgment arguing it has been months since he requested the records and the FBI has failed to promptly provide them.

The Court finds given the large volume and complexity of responding to Plaintiff's request, releasing documents at the rate of 500 pages per month balances the need for transparency in government with the allocation of the FBI's limited resources. Plaintiff is not entitled to summary judgment.

## Count 34: FOIA # 1399307 (Unite the Right Rally Report authored by former AUSA Timothy Heaphy, and released publicly)

Summary of FBI Actions: Plaintiff submitted a request for this subject as item 14 of his February 27, 2018 letter seeking both main file records and cross-references. The FBI acknowledged receipt of the request by letter dated March 23, 2018. Plaintiff filed the instant Complaint on April 9, 2018. By letter dated April 10, 2018, the FBI advised the requested information was located in a currently pending investigative file that is exempt from disclosure pursuant to FOIA Exemption (b)(7)(A). On April 17, 2018, Plaintiff filed an administrative appeal with DOJ/OIP concerning the FBI's response, challenging the FBI's application of FOIA Exemption (b)(7)(A) to the records. OIP acknowledged receipt

of the appeal by letter dated May 10, 2018, assigning it DOJ-AP-004965. OIP advised the Plaintiff by letter dated August 23, 2018, it was remanding the request to the FBI for further consideration. By letter dated November 30, 2018, the FBI advised that after completing a search for the responsive record, it was unable to locate the specific record and was closing the request. By letter dated December 17, 2018, Plaintiff filed another administrative appeal with OIP, alleging the FBI was lying about the record. OIP advised Plaintiff on August 2, 2019, it was closing the appeal per DOJ regulations at 28 C.F.R. §16.8(b)(2) (2018) once an appeal becomes the subject of litigation it is not acted upon.

Search: The FBI conducted an OTN search of the CRS via Sentinel, using the following terms: "Unite the Right Rally", "Unite the Right", "Timothy Heaphy", "Tim Heaphy", "Charlottesville Rally", "Unite the Right Rally Report", and "Unite the Right Charlottesville". Although records were located concerning the rally, the specific report sought was not found in the records.[14] The search cut-off date utilized was November 28, 2018, and this search was conducted and verified at the litigation stage.

Defendants seek summary judgment on Count 34 arguing no records responsive to Plaintiff's request were located.   Plaintiff responded that the FBI's response was "absurd" but that as he was obtaining the report by other means, he does not contest the motion for summary judgment on this count.

Defendants are granted summary judgment as to Count 34.

### Sua Sponte Grant of Summary Judgment

Given that the Court has determined the FBI's response up to this point does not violate FOIA, the Court plans to *sua sponte* grant summary judgment on Counts 3, 4, 5, 10, 12, 17, 28, 30, 32, and 33.   To establish a cause of action under the FOIA, a plaintiff must show that, in response to a valid FOIA request, "an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"   *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).   The Court has determined that the FBI has not improperly

---

[14] Given that the report is described by Plaintiff as a report authored by a former AUSA and not by the FBI, it is not unusual that the FBI would not have a copy within its file. The FBI conducted a text search within the relevant file; however, it was still unable to locate the requested report.

withheld records. The Court has found the FBI's searches were reasonable and the current schedule of processing records at the rate of 500 pages per month is reasonable, and the Court sees no need to keep this case pending for more than nine years while the FBI proceeds with producing the records. It is not in the interest of judicial efficiency to leave a case languishing on the Court's docket for such a lengthy period of time. Should the FBI stop processing the records at the rate of 500 pages per month, Plaintiff may have a new FOIA claim. The Court's granting of summary judgment on this count should be interpreted as a review only of the FBI's actions up to the date of this Order.

Under Federal Rule of Civil Procedure 56(f), the Court may grant summary judgment independent of a motion provided the parties are given notice and a reasonable time to respond. Accordingly, the Court **ORDERS** Plaintiff and Defendants to respond to the Court's proposed entry of judgment on these counts within 30 days. Any opposition must be supported by competent evidence demonstrating a genuine issue of material fact exists that prevents this Court from entering judgment as a matter of law.

### Conclusion

For the reasons set forth above, the Motion for Partial Summary Judgment (Doc. 37) filed by Plaintiff is **DENIED**; the Motion for Partial Summary Judgment (Doc. 51) filed by Defendants is **GRANTED**; judgment shall be entered in favor of Defendants and against Plaintiff on counts 6-9, 11, 13-16, 18-27, 29, and 31 at the close of the case; and the parties are **ORDERED** to respond to the Court's proposed entry of judgment pursuant to Rule 56(f) on counts 3-5, 10, 12, 17, 28, 30, 32-33 within 30 days of the date of this Order.

**IT IS SO ORDERED.**

**DATED:   March 17, 2020**

s/ *Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**